In re Jocelyn S. TULPER and Leon Tulper, Debtors.

No. 06–11542–SBB.

United States Bankruptcy Court, D. Colorado.

May 22, 2006.

Russell W. Richardson, Denver, CO, for Debtors.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court on the Motion for Waiver of Budget and Credit Counseling ("Waiver Motion") filed by Jocelyn "Joy" S. Tulper and Leon Tulper ("Debtors") on April 10, 2006 (Docket # 14). The Court, having reviewed the Motion and the within case file, and having heard the testimony of the Debtors and arguments of counsel, makes the following findings of fact, conclusions of law, and Order.

The Debtors seek a waiver of the requirement that they obtain credit counseling prior to filing bankruptcy and file a certificate regarding same in accordance with 11 U.S.C. § 109(h)(4) of the Bankruptcy Abuse Prevention and Consumer

Protection Act of 2005 ("BAPCPA").[1]  For the reasons stated on the record in open court, and for the reasons set forth more fully herein, the Court GRANTS Debtor's Waiver Motion.

## I. *Facts*

Debtors filed for relief under Chapter 13 of the United States Bankruptcy Code ("Code") on April 5, 2006.  The Court issued a Notice of Deficiency on that same date because the Debtors failed to file a Certificate of Budget and Credit Counseling Course ("Certificate") in accordance with 11 U.S.C. § 109(h).  The Court directed that the Certificate be filed on or before April 15, 2006.

On April 10, 2006, the Debtors filed their Waiver Motion.  The Debtors stated as follows:

1.  That one or both of the Debtors is disabled within the meaning of 11 U.S.C. Sec. 109(h)(4).

2.  That by virtue of said condition Debtor(s) is/are exempt from the requirement of completion of Budget and Credit Counseling and filing a Certificate of Completion as a condition precedent to filing the above-captioned action.

Beyond these two statements, very little information was provided to the Court as to why the Debtors would be eligible for the exemption under 11 U.S.C. § 109(h)(4).

On April 21, 2006, Debtors filed their Statement of Employee Compensation (i.e. pay advices) in accord with 11 U.S.C. § 521(a)(1)(B)(iv).  The Statement reflected that Debtor Joy Tulper was the principal owner of a defunct jewelry business.  Debtor Leon Tulper is the principal owner of Tulper and Company, a jewelry and watch repair business.  In addition, Debtor Joy Tulper acts as a paid consultant for Tulper and Company.

The Court conducted an evidentiary hearing on this matter on May 11, 2006.  Debtors appeared with their counsel, Mr. Russell Richardson.  There were no other appearances.  Noticeably, there were no appearances by any representative of the United States Trustee or the Chapter 13 Trustee.  The Motion was uncontested.  Nevertheless, Debtors were both sworn and testified under oath.

Debtor Joy Tulper testified that she had operated the jewelry business from 1984 to 2005.  The business had declined because of her physical condition.  Prior to filing bankruptcy, Mrs. Tulper had consulted an accountant, Mr. Don Bennett, who assisted her in ascertaining what options she had available, including bankruptcy.

Debtor Joy Tulper testified that she was entitled to a waiver of the 11 U.S.C. § 109(h) requirement because of her physical condition. Mrs. Tulper testified that she suffered from heart problems, extensive tremors, severe asthma, a bad lung, arthritis, a disintegrated spine (2 discs missing), and a plate in her right ankle.  Her combined conditions made her wheelchair-bound.  Moreover, she is taking approximately seventeen prescribed medications per day to manage her tremors, pain, heart condition.

Mrs. Tulper testified that she did not own or otherwise have access to a computer, and had no computer skills.  She stated that her mobility was severely limited by her age, physical condition, and dependence upon an oxygen compressor/ventilator.

The Court observed Mrs. Tulper during her testimony.  Her testimony was credible and sincere.  She is a senior citizen who arrived by wheelchair to the court-

---

1.  Pub.L. 109–8, 119 Stat. 23 § 106 (Apr. 20, 2005).

room and struggled to rise when this Judge took the bench (which, the Court, upon realizing same, advised her that such formality would not be required). Her tremors were obvious during her testimony. In addition, she struggled to speak during the hearing and was on an oxygen compressor/ventilator. With respect to the seventeen medications referenced above, she brought her medication container to the· hearing. The container, itself, was the size of a small tool box.

Debtor Leon Tulper testified that he was 97% deaf (but less so with hearing augmentation) and received disability payments from the Department of Veterans Affairs stemming from service in World War II.[2] He also had a 40% disability with respect to use of his hands and feet.

Mr. Tulper did not own or otherwise have access to a computer, and had no computer skills. Because of his hearing disability, phone and in person communications were difficult, if not impossible.

The Court observed Mr. Tulper during his testimony and found him to be credible and sincere. It was quite evident that Mr. Tulper either could not hear or had little hearing capability even with the use of a hearing aid. In spite of his physical condition, it was evident from his testimony and actions from the hearing that he was still attempting, at 81 years of age, to be the care giver to his wife of 60 years.

The Court also heard statements from counsel for the Debtors. He informed the Court that he had known the Debtors for 21 years. He advised that, in representing them in this case, he has struggled explaining matters to the Debtors. He believes that the Debtors could not fully participate in, or appreciate, the counseling process required by 11 U.S.C. § 109(h). In addition, the approximately seventeen medications that Mrs. Tulper is required to take on a daily basis somewhat impairs her ability to understand information communicated to her.

## II. *Discussion*

On October 17, 2005, 11 U.S.C. § 109(h) became effective in consumer cases as a result of BAPCPA, 11 U.S.C. § 109(h)(1) mandates that:

> an individual may not be a debtor under this title unless such individual has, during the 180–day period preceding the date of filing of the petition by such individual, received from an approved nonprofit budget and credit counseling ... an individual or group briefing (including a briefing conducted by telephone or on the Internet) that outlined the opportunities for available credit counseling and assisted such individual in performing a related budget analysis.

A waiver of this mandate is provided in 11 U.S.C. § 109(h)(4), which provides:

> The requirements of paragraph (1) shall not apply with respect to a debtor whom the court determines, after notice and hearing, is unable to complete those requirements because of incapacity, disability, or active military duty in a military combat zone. For the purposes of this paragraph, incapacity means that the debtor is impaired by reason of mental illness or mental deficiency so that he[3] is incapable of realizing and making rational decisions with respect to his financial responsibility; and 'disability' means that the debtor is so physically

---

**2.** A letter from the Department of Veterans Affairs was tendered to the Court and marked as Exhibit A. The original letter was returned to the Debtor at the conclusion of the hearing.

**3.** A strict construction of this statute as enacted—and, evidently, intended—by Congress would seem to limit the "incapacity" exemption to a male debtor by the deliberate and purposeful use of the word "he" and "his." Gender-interchangeability is not addressed in any provision of the Code. Conceivably, "he" could mean "they" as crafted by Congress in

impaired as to be unable, after reasonable effort, to participate in an in person, telephone, or Internet briefing required under paragraph (1).

■ At the time of this opinion, the Court is aware of only one published case addressing 11 U.S.C. § 109(h)(4) directly: *In re Stockwell.*[4] Based upon the analysis in the *Stockwell* case, and the language of the statute, it appears that allowance of a permanent exemption must be dealt with on a case-by-case basis and decisions will vary based on the facts of the case.

■ Clearly, the permanent exemption is only available in *very* limited circumstances.[5] It is specific, insofar as defining "disability" and "incapacity;" it is rigid in setting the bar for the granting of the exemption very high. However, the legislative history with respect to when an exemption is appropriate is, at best, scant. Consequently, it will be the courts that will need to establish criteria for determining what constitutes a "disability" under this new law. *Collier on Bankruptcy* notes that:

> By excepting [impaired] individuals from the [prepetition credit counseling] requirement, section 109(h) avoids the absurd situation in which a debtor would be required to obtain a briefing even if

suffering from Alzheimer's disease or some other disability that would make the briefing meaningless or even impossible.[6]

The authors of *Collier on Bankruptcy* go on to state that "especially in view of the serious consequences of dismissal, the court should find a way to allow a good faith case to proceed despite this nonjurisdictional defect." [7]

■ From what this Court can ascertain, it appears that a "disability" exemption under 11 U.S.C. § 109(h)(4) can *only* apply if a debtor demonstrates that:

(1) the debtor is severely physically impaired;

(2) the debtor has made a reasonable effort, despite the impairment, to participate in the prepetition credit counseling; and

(3) the debtor is unable, because of the impairment, to participate *meaningfully* in an in person, telephone, or Internet briefing prepetition.

■ First, both Debtors have demonstrated that they are severely physically impaired.[8] Mrs. Tulper is not very ambulatory because she is tethered to a breathing apparatus and is wheelchair bound. Mr. Tulper's hands and feet are disabled and he is virtually deaf. Counsel for the

---

accordance with 11 U.S.C. § 102(7). But then, that would mean two men could file a joint petition. This would seem to run counter to 11 U.S.C. § 302 and FED.R.BANKR.P. 1015(b), which limit a joint filing, in the case of individuals, to a husband and wife. The Court, here, however, does not need to address this question because this matter presents, primarily, the question of what constitutes a "disability" under 11 U.S.C. § 109(h)(4).

4. 2006 WL 1149182 (Bankr.D.Vt. April 27, 2006). There are several cases that discuss, conceptually, section 109(h)(4) exemptions, but very little analysis of section 109(h)(4) in the context of an actual case. *See, e.g., In re Dixon,* 338 B.R. 383, 386 (8th Cir. BAP 2006).

5. 2 *Collier on Bankruptcy* ¶ 109.09[4], at 109–60 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev.2005).

6. *Id.*

7. *Id.*

8. Depending on the circumstances of the case, a debtor's own testimony, alone, may not suffice. Testimony of health care professionals or others qualified in the field may need to be called to testify to demonstrate the validity of the incapacity or disability. Here, under the limited circumstances of this case, the outward manifestations of the Debtors' conditions were apparent, such that it was not necessary for this Court to consider such evidence.

Debtors assisted them in getting to their meeting of creditors and to this Court for the hearing on this matter.[9] It is evident that without his assistance they would be unable to be physically present at the meeting of creditors and this hearing.

Second, the Debtors appear to have made a reasonable effort to *address* credit counseling.[10] Both had conferred with Don Bennett, an accountant, and their friend of twenty years and personal attorney, Mr. Richardson. It became clear to Mr. Richardson that communicating *anything* to his clients was very difficult and that attendance at prepetition credit counseling would be meaningless for the Debtors.

Third, the Debtors, here, are unable to participate in a meaningful way in the briefing. The Court believes that "meaningful"[11] participation is what Congress had to have intended in its requirement for credit counseling. The reason, in part, for

this conclusion is found in the House Report accompanying this new provision, which states:

Most important, S.256 requires debtors to *participate* in credit counseling programs before the filing for bankruptcy relief (unless special circumstances do not permit such participation). *The legislation's credit counseling provisions are intended to give consumers in financial distress an opportunity to learn about the consequences of bankruptcy— such as the potentially devastating effect it can have on their credit rating— before they decide to file for bankruptcy relief.*[12]

■ If a debtor goes to credit counseling and, because of a significant impairment, cannot *participate* in the credit counseling such that he or she can understand what is conveyed during the credit counseling session, so as to be able to have the "opportunity to *learn* about the conse-

9. An argument may well be made that, if these Debtors can attend a meeting of creditors or a hearing before the court, then they should be able to attend the prepetition credit counseling. There is a distinction here. The prepetition credit counseling outlines for the debtors *opportunities* for credit counseling and budgeting analysis. It requires cognitive focus and participation. It also requires a potential debtor to understand financial and budgeting analysis options, choices, and opportunities. The Court, while finding the Debtors to be competent and lucid, finds these Debtors are unable to sufficiently comprehend information stated to them, by virtue of their physical impairments/barriers. Attendance before this Court to answer questions, does not necessarily require the Debtors to process the information to formulate a budget and analyze finances. Moreover, the Court questions the value of credit counseling for senior citizens who have found themselves in bankruptcy because of medical problems and physical impairments.

10. As this is new territory for all involved in this case, the "reasonableness" element as presented is weak. However, counsel made a

record with respect to the efforts to address credit counseling. Future case law will better refine what constitutes a "reasonable effort."

11. "Meaningful," having the definition of "having a meaning or purpose." Merriam–Webster OnLine, http://www.m-w.com/dictionary/meaningful (last visited May 19, 2006). "Meaning," in turn, as being defined as:

1  a: the thing one intends to convey especially by language: PURPORT
b: the thing that is conveyed especially by language: IMPORT
2 : something meant or intended: AIM <a mischievous *meaning* was apparent>
3 : significant quality; *especially* implication of a hidden or special significance <a glance full of *meaning* >
4  a: the logical connotation of a word or phrase
b : the logical denotation or extension of a word or phrase
*Id.* at http://www.m-w.com/cgi-bin/dictionary/meaning.

12. H.R.Rep. No. 109–31, pt. 1, at 18 (2005), U.S.Code Cong. & Admin. News 2005, pp. 88, 103–104 (emphases added).

quences of bankruptcy," then the prepetition credit counseling becomes meaningless. It is without purpose and utility. Here, these Debtors, because of their physical condition could not meaningfully participate in the prepetition credit counseling.[13]

Finally, the prepetition credit counseling requirement is, according to the legislative history and the sponsors of BAPCPA, an effort to educate debtors as to their own financial options and guide them to the appropriate solution—be it a non-bankruptcy workout, or helping the debtor ascertain if bankruptcy, and its various chapters, are the only option.[14] On the other hand, the proponents of BAPCPA have acknowledged that it is designed to put a halt to the "growing perception that bankruptcy relief may be too readily available and is sometimes used as a first resort, rather than a last resort."[15] Thus, prepetition credit counseling serves as a tactic to drive debtors away from bankruptcy, or, at a minimum, away from Chapter 7 liquidations, into Chapter 13 repayment plans. Here, the Debtors have filed for relief under Chapter 13. Consequently, the evident primary goal of Congress is satisfied, here, anyway.

### III. *Order*

IT IS THEREFORE ORDERED that the Debtors' Waiver Motion is GRANTED (Docket # 14).

---

**13.** Notwithstanding the Court's commentary in footnote 3, the Court would also conclude that Mrs. Tulper also is exempt for "incapacity." The approximately 17 medications that she is required to take on a daily basis creates a mental deficiency so that she is incapable of realizing and making rational decisions with respect to her financial responsibilities for the purposes of credit counseling.

**14.** *Id., see also,* H.R.Rep. No. 109–31, pt. 1, at 2 (2005), U.S.Code Cong. & Admin. News 2005, pp. 88–89.

**15.** H.R.Rep. No. 109–31, pt. 1, at 4 (2005), U.S.Code Cong. & Admin. News 2005, pp. 88, 90–91.